IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

SONYA NICHOLSON, o/b/o A.R.[1],  *
                                 *
    Plaintiff,                   *
                                 *
vs.                              *     CIVIL ACTION 11-00004-WS-B
                                 *
MICHAEL J. ASTRUE,               *
Commissioner of Social Security, *
                                 *
    Defendant.                   *

## REPORT AND RECOMMENDATION

Plaintiff Sonya Nicholson ("Plaintiff") brings this action on behalf of her minor child, A.R., seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for child supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. ("SSI"). This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   Oral argument was waived. (Doc. 21). Upon careful consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

_____

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, the Court has redacted the minor child's name throughout this opinion and refers to her only by her initials, "A.R."

## I.   **Procedural History**

Plaintiff protectively filed an application for supplemental security income benefits on behalf of her daughter A.R. on September 6, 2005, alleging that her daughter has been disabled since October 1, 1999. (Tr. 33-36, 46). In claiming benefits, Plaintiff alleges disability due to Charcot-Marie-Tooth Disease ("CMT"). (Tr. 28, 39). Plaintiff's application was denied at the initial stage, and she filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 29-32). Following an administrative hearing, the ALJ, on April 10, 2008, issued an unfavorable decision finding that A.R. is not disabled. (Tr. 10-21, 149-62). Plaintiff's request for review was denied by the Appeals Council ("AC").

Subsequent thereto, Plaintiff filed suit in this Court. See Nicholson v. Astrue, Civil Case No. 08-00476-M. In an Order dated March 13, 2009, the Court found that the ALJ's decision did not provide any analysis of how the decision to deny benefits was reached. Thus, the decision was reversed, and Plaintiff's claim was remanded to the Social Security Administration for further administrative proceedings including, at a minimum, a supplemental hearing for the gathering of evidence. (Tr. 3-5, 199-202).

A second administrative hearing was held on June 3, 2010, before ALJ Thomas M. Muth, II.   The hearing was attended by

2

Plaintiff, her daughter A.R., her attorney, and medical expert Henry Durham, M.D. (Tr. 259-84). On August 23, 2010, ALJ Muth issued an unfavorable decision finding that A.R. is not disabled. (Id. at 172-91). Plaintiff's request for review was denied by the AC on November 5, 2010. (Id. at 163-5).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 1383(c)(3).

## II.  Issues on Appeal

A.  Whether the ALJ erred in finding that A.R.'s impairments do not meet Listing 111.06?

B.  Whether the ALJ erred in finding that A.R.'s impairments do not meet Listing 101.02?

C.  Whether the ALJ erred in rejecting the opinions of an examining physician?

D.  Whether the ALJ erred in finding that A.R. has less than marked limitations in the domain of health and physical well-being?

## III. Factual Background

A.R. was born on January 3, 1995. She was 10 years old and had completed fourth grade when her application was submitted. At the time of the administrative hearing on March 13, 2008, A.R. was 13 years old and in the seventh grade. (Tr. 46, 152). At the administrative hearing on June 3, 2010, A.R. was 15 years old and in the ninth grade. (Id. at 263). At both hearings, A.R. testified that she walks with a limp, that she has pain in

3

her right leg and in the right side of her foot, and that the pain is a seven on a scale of one to ten. (Id. at 156-8). A.R. also testified that she cannot run, that she has difficulty climbing stairs, and that she falls approximately "twice a week." (Id. at 264-7). According to A.R., she holds on to her mother or someone else to help her balance when walking through the mall. (Id. at 268) A.R. also testified that she rides a regular school bus to school, that she goes shopping with her mother, and that she attends church and sporting events. (Id. at 155).

Regarding her hands, A.R. testified that her hands constantly shake and tremble, that she has trouble writing at school because her hand gets tired, that her teachers allow her to take breaks, that she is unable to carry her lunch tray and book bag, and as a result, she requires assistance from other students. (Id. at 267-9) A.R. also testified that she does not wash dishes because she cannot hold on to them, and that she typically has to use the restroom four or five times during the school day, and twice during the night[2]. (Id. at 158-160, 266-9). A.R. also testified that she suffers from asthma, for which she must use her inhaler twice daily. (Id. at 269-70).

---

[2] At the first hearing, A.R. testified that she sometimes washes dishes, but her mother does not permit her to cook because she is not a good cook. (Id. at 159)

Plaintiff also testified at the administrative hearing. She testified that A.R. is not able to open a bottle, and that she does not permit A.R. to wash dishes or cook because she has no grip. (Id. at 271). She further stated that when shopping, A.R. has to hold on to her because her balance is not good. She further reported that A.R. falls three or four times a week. According to Plaintiff, A.R. had surgery on her foot and still has a pin in her right ankle. (Id. at 271-3).

Dr. Henry Durham testified at the administrative hearing as a medical expert. He confirmed that he had reviewed the medical records and A.R.'s school records. Dr. Durham identified A.R.'s impairments as peripheral neuropathy, or CMT, Type II, status post surgery, mild asthma, and food allergies. (Id. at 277). Dr. Durham noted that Listing 111.06, which relates to motor dysfunction due to any neurological disorder is probably the most applicable Listing to A.R.'s situation, and that independent documentation from school personnel about any functional limitations caused by A.R.'s condition would be helpful. (Id. at 278) Dr. Durham opined that A.R. has no limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others, a less than marked limitation in health and physical well-being,

and a marked limitation in moving about and manipulating objects[3]. (Id. at 279).

## IV. **Analysis**

### A. **Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[4] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but

---

[3] Dr. Durham's opinion regarding the domain of caring for one's self is not clear because it appears that he included it with the domain of moving about and manipulating objects as he discussed A.R.'s physical limitations; however, the gist of his testimony supports a finding that A.R. has a marked limitation in the fourth domain, the domain of moving about and manipulating objects. (Id. at 279).

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S.  Dist. LEXIS 10163 (S.D. Ala. 1999).

**B. <u>Childhood Disability Law</u>**

The Personal Responsibility and Work Opportunity Act of 1996, which amended the statutory standard for children seeking supplemental security income benefits based on disability, became effective on August 22, 1996. See Pub. L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (codified at 42 U.S.C. § 1382c). The definition of "disabled" for children is:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

See 42 U.S.C. § 1382c(a)(3)(C)(I), 20 C.F.R. § 416.906.[5]   The regulations provide a three-step sequential evaluation process for determining childhood disability claims. 20 C.F.R. § 416.924(a).

   At step one, a child's age/work activity, if any, are identified to determine if he has engaged in substantial gainful activity. At step two, the child's physical/mental impairments are examined to see if he has an impairment or combination of impairments that are severe. Under the regulations, a severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). To the extent the child is determined to have a severe impairment, at step three, the Commissioner must then determine whether the impairment or combination or impairments meet or is medically or functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfies the duration requirement. 20 CFR § 416.924.

   If the ALJ finds that the impairments are severe, but do not meet the listing requirements, he may find that the

_____

   [5] On September 11, 2000, the Commissioner published Final Rules for determining disability for a child under the age of 18. See 65 Fed. Reg. 54,747, corrected by 65 Fed. Reg. 80,307. These rules became effective on January 2, 2001 and apply to Plaintiff's claim. See 65 Fed. Reg. at 54,751.

impairments result in limitations that functionally equal the
listings[6]. 20 CFR § 416.926a. To establish functional
equivalence in step 3, the ALJ must have a medically
determinable impairment that results in marked limitations in
two functional domains or an extreme limitation in one domain.
20 CFR § 416.926a(a). The six domains are: (1) acquiring and
using information; (2) attending and completing tasks; (3)
interacting and relating to others; (4) moving about and
manipulating objects; (5) caring for oneself; and (6) health and
physical well-being. 20 CFR 416.926a.

C.   **Discussion**

   **1. ALJ's Decision**

   As noted supra, following the remand of this case to the
Agency, a second administrative hearing was conducted and a
second unfavorable decision was issued on August 23, 2010. The
ALJ determined that while A.R. has the severe impairments of
Charcot-Marie-Tooth disease Type II, status post foot surgery,
allergic rhinitis, and asthma, they do not meet, medically equal

---

   [6] In making this assessment, the reports of the State
Agency medical consultants, reports of other treating, examining
and non-examining medical sources, and the claimant's symptoms,
including pain and the extent to which these symptoms can
reasonably be accepted as consistent with the objective medical
evidence and other evidence, are all taken into consideration.
20 C.F.R. §§ 416.927, 416.929; and SSR 96-5, 96-6p and 96-7p.

or functionally equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appx. 1. (Tr. 175). The ALJ also found that A.R. has "less than marked" limitations in caring for herself and health and physical well-being, that she has a "marked" limitation in moving about and manipulating objects, and that she does not have any limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others. (Tr. 183-191). Accordingly, the ALJ concluded that because A.R. does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, she is not disabled under the Act. (Tr. 191).

### 2. Record Evidence

#### Academic Evidence

Included in the record are academic records for A.R. from Francis Marion High School the years 2007-2008 and 2009-2010. (Id. at 66, 226-30). These records indicate that A.R. was a excellent student earning As and Bs in all of her subjects. (Id.)

#### Medical Evidence

In August of 2000, A.R. was seen by Holly Mussell, M.D. (hereinafter "Dr. Mussell"), a neurologist at Multispecialty Pediatrics. Dr. Mussell noted that A.R. had a history of

difficulty walking, which had progressed over the past one to two years, and pain in the legs. (Id. at 98-100). Upon examination, Dr. Mussell observed weakness in A.R.'s distal lower extremity and either acquired or inherited peripheral neuropathy. Dr. Mussell noted A.R.'s environmental allergies and her use of an inhaler and Atarax[7]. Dr. Mussell observed that A.R. was unable to curl her toes and that she had decreased vibration sense and decreased pin prick to the mid lower legs. A.R. was also unable to heel or toe walk. (Id. at 133). A nerve conduction velocity study, conducted on August 14, 2000, was indicative of "primarily axonal sensory motor neuropathy affecting primarily the lower extremities" and was compatible with "hereditary axonal neuropathy." (Id. at 100, 101, 103).

In November 2000, A.R. was seen by Dr. John Killian, an orthopedist.  He diagnosed A.R. with "probable Charcot-Marie-Tooth." (Id. at 91). To treat A.R.'s right cavovarus foot deformity, Dr. Killian performed a right posterior tibial lengthening, flexor hallucis longus (FHL) lengthening, flexor digitorum communis (FDC) lengthening, heel cord lengthening, and

---

[7]Atarax is used to relieve the itching caused by allergies and to control the nausea and vomiting caused by various conditions, including motion sickness. It is also used for anxiety and to treat the symptoms of alcohol withdrawal. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000796/.   (Last visited Mar. 15, 2012).

first metatarsal corrective osteotomy with Kirschner wire pin
fixation on November 30, 2000. After the surgery, a short leg
cast was applied, and Dr. Killian noted A.R. tolerated the
procedure well. (Id. at 91-97).

   In a letter dated January 8, 2001, Dr. Mussell noted that
biopsies were performed after A.R.'s surgery, that the nerve
biopsy showed loss of myelinated fibers, and the muscle biopsy
showed fiber type grouping, and that the results were consistent
with axonal form of neuropathy. Dr. Mussell noted that A.R.'s
hands seemed strong but that she was having problems with her
handwriting. Also, she did not report difficulties with her
bowels or bladder. Examination of her upper extremities was
essentially normal except for 4+/5 strength in intrinsic and her
grip was normal. In her lower extremities, A.R. had atrophy of
the lower legs and foot muscles. Dr. Mussell noted that there
was "unquestionably decreased vibration in the left lower
extremity," and that the lower right leg could not be tested due
to the cast. Dr. Mussell opined that A.R. has CMT, type II,
which is hereditary. She also noted that the condition could be
severely progressive, but that individuals with CMT, type II, do
not typically lose the ability to ambulate. (Id. at 129-30).

   In a letter dated June 28, 2001, from Dr. Mussell to Dr.
Killian, Dr. Mussell stated that A.R.'s mother reported that
A.R. was doing well, that she was not experiencing progression

of her weakness, muscle cramps, or pain, and that she had no difficulty with her bowels or bladder. Dr. Mussell noted that A.R.'s handwriting was good and that she had completed kindergarten and was continuing to first grade. Dr. Mussell also noted that A.R. was having problems with the fit of her AFOs[8] and did not like to wear them, and that her insurance coverage did not cover physical therapy.

Dr. Mussell reported that on examination, A.R. had atrophy of the distal legs, flat feet, and that she was unable to heel or toe walk. The strength in A.R.'s upper extremities, iliopsoas, quadriceps, and hamstrings was normal. A.R. had no toe extension or trace toe flexion in the right foot. On the left, she was able to invert the left foot and had moderate toe flexion. Sensation was normal to pinprick, proprioception, and light touch. A.R.'s deep tendon reflexes were 2+ in the upper extremities, 1+ at the knees, and absent at the ankles. Her gait was remarkable for her foot drop out of her AFOs. Dr. Mussell gave Plaintiff a prescription for A.R. to engage in physical therapy at school and recommended evaluation on a yearly basis. (Id. at 128).

---

[8] AFOs, or ankle fixation orthotics.

A.R. presented to Dr. Samer Assaad on July 5, 2001, with complaints of leg pain from hip down to foot and allergies. (Id. at 103).

Dr. Killian evaluated A.R. on February 5, 2002, and diagnosed her with CMT, status post right vavoarus foot reconstructions, and AFO wear. He noted that she was doing well overall and that her AFO fitted her in a satisfactory manner. No new deformity on the left side was observed, and the right foot showed well-healed scar, no prominence of hardware, slightly less than neutral position of her heel, and active dorsiflexion just to about -5 degrees. Her bilateral gait was described as long steppage type. A.R. was to return in six months for a gait check. (Id. at 124).

During A.R.'s September 13, 2002 visit with Dr. Killian, she had no significant complaints other than the need for new AFOs. On exam, Dr. Killian observed atrophic upper and lower extremities, weakness in her quadriceps and hamstrings, mild genu valgum[9], and pes planus.[10] Dr. Killian also observed acute

---

[9] Genu valgum is often referred to as "knock knees," a condition in which the knees touch, but the ankles do not touch. The legs angle inward. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002243/. (Last visited Mar. 15, 2012).

[10] Pes Planus is otherwise known as "flat feet," a condition in which the foot does not have a normal arch when standing. See (Continued)

dorsiflexion of 20 degrees and plantarflexion of 35 degrees. A.R. as directed to return in six months. (Id. at 123).

A.R. was next seen my Dr. Killian on June 18, 2003. Dr. Killian observed atrophic upper and lower extremities, no significant fixed contractures, mild genu valgum, and supple pes planus. A.R. was directed to continue stretching and strengthening exercises and the use of her hinged AFOs. (Id. at 123).

A.R. was evaluated by Dr. Mussell on July 2, 2004, and July 25, 2005. (Id. at 125-6). The treatment notes reflect that A.R.'s legs were better, that she was making all As in school, and that she reported hand cramps, but they were not much of a problem. A.R.'s foot drop was noted, as was the fact that she could not heel or toe walk. (Id. at 126).

A.R. was evaluated by Dr. Killian on July 20, 2004. He noted that she was doing well and not having any significant pain or symptoms. On physical exam, the "usual and customary mild weakness" was present. Dr. Killian directed A.R. to use a Theraband for stretching, to continue her strengthening, and to return in one year. (Id. at 122). A.R. was next seen by Dr.

---

http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002242/.   (Last visited Mar. 15, 2012).

Killian on June 10, 2005[11]. Dr. Killian opined that she was
"doing quite well. [A.R.] is an independent ambulator. Mother
has not noticed any significant change in her alignment." On
physical exam, moderate atrophy from her knees down was
observed. It was also noted that A.R.'s right heel was in slight
varus but otherwise was pes plantigrade. Dr. Killian observed
that A.R. had marked weakness in plantar flexors compared to
dorsiflexors of the left foot. He concluded that A.R. had no
need for bracing and instructed her to return in one year. (Id.
at 122).

 A.R. was seen by Dr. Killian for a follow-up visit on July
11, 2007. He noted that she was doing well overall. Dr. Killian
observed that A.R. had a mild drop foot when ambulating and
minimal gluteal musculature weakness. X-rays revealed that both
hips were reduced at the pelvis. Dr. Killian opined that the
elective hardware should be removed from A.R.'s foot if she

---

 [11] Percy Sullivan, MD, completed a Childhood Disability
Evaluation at the request of the Agency on December 12, 2005.
(Id. at 134-40). Dr. Sullivan diagnosed A.R. with peroneal
muscular atrophy (CMT, Type II). He opined that A.R. has a
severe impairment, but that her impairment or combination of
impairments did not meet, medically equal, or functionally equal
the Listings. According to Dr. Sullivan, A.R. has less than
marked limitations in the domains of moving about and
manipulating objects and health and physical well being, and no
limitations in the domains of acquiring and using information
and attending and completing tasks, interacting and relating
with others, and caring for herself. (Id.)

became more symptomatic. A.R. was directed to wear regular shoes and return for follow-up in one year. (Id. at 241).

An office note from Children's Health System dated July 23, 2007 and signed by Dr. Jan Mathisen (on March 14, 2008) reflects that A.R. was not at risk for fall. (Id. at 245-7).

On February 5, 2008, Plaintiff completed a Disability Report – Appeal on behalf of A.R. (Id. at 58-65). Plaintiff reported that A.R. "complains more about pain in her legs, back, and arms and hands more now than before. Her legs shake a lot when sitting down." She further reported that A.R. experiences hand shakes, and that these changes occurred in 2005. She also stated that A.R. requires assistance getting in and out of the bathtub, that Plaintiff combs A.R.'s hair for her, and that A.R. cannot ride a bike, jump rope, or throw a ball. (Id.)

In Dr. Killian's treatment notes dated July 14, 2009, he observed that A.R. is doing quite well, and that she has a foot flat type of gait with a slight foot drop. He also observed that A.R. has a fair steppage type of gait, and opined that she would benefit from AFOs, but that she does not want to wear them. A.R. was directed to return for follow-up in two years.(Id. at 240).

Dr. Chris J. Searcy examined A.R. on April 26, 2010. Dr. Searcy noted that A.R. had a history of falls and stumping her feet, difficulty with balance, daily ambulation, and manipulating objects such as school books, her bookbag, and pots

17

and pans. On exam, Dr. Searcy observed that A.R. appeared in no apparent distress but ambulated slowly and deliberately, always using support. Dr. Searcy also observed that A.R. has a pronounced foot drop bilaterally with weakness in her hamstrings and quadriceps, which is worse on the right than the left side. He also noted muscular atrophy in the upper and lower extremities. Dr. Searcy found A.R. exhibited decreased bilateral grip strength and wrist strength. A.R.'s range of motion was relatively normal in the wrists but was decreased bilaterally in the ankles. He noted A.R. has difficulty with balance, advanced gait, and agility. He opined that while A.R. has made progress and is functional because of surgeries and therapy, she is greatly impeded in terms of her physical activities, particularly in advanced ambulation, ability to balance and agility. (Id. at 232-233).

Dr. Searcy also completed a Broad Functional Limitations Questionnaire dated April 26, 2010. (Id. at 234-235). Dr. Searcy opined that A.R. has no limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others. He also opined that A.R. has marked limitations in moving about and manipulating objects and in health and physical well-being. Dr. Searcy did not offer any opinion with respect to the domain of caring for herself. (Id. at 234-5).

### 3.   Issues

#### a. A.R. does not meet Listing 111.06

As noted supra, Plaintiff argues that the ALJ committed reversible error by finding that A.R.'s impairments did not meet or equal Listing 111.06, which addresses disability based on neurologic motor dysfunction. 20 C.F.R. Pt. 404, Subpt. P, App 1. According to Plaintiff, A.R. ambulates without an assistive device but is unable to do so while manipulating objects. Further, Plaintiff contends that Listing 111.06 does not require the complete inability to ambulate without assistive devices or to use one's hands for fine or gross manipulation, rather the Listing simply requires that the condition "result in the disruption of" either fine or gross movements or gait and station. According to Plaintiff, Dr. Durham intimated that the record does not contain independent documentation of A.R.'s functioning, such as from an school teacher, to aid him in determining whether A.R. met a Listing, and as a result, the ALJ should have sought said additional documentation. (Doc. 15).

In opposition, the Commissioner counters that substantial evidence supports the ALJ's finding that A.R.'s impairments do not meet or equal any listed impairment, including Listings 111.06 and 101.02A. Additionally, the Commissioner asserts that to the extent Plaintiff argues that the ALJ did not fully

develop the record, it is Plaintiff's burden to prove disability, not the ALJ's. (Doc. 21).

Listing 111.06 provides:

> **111.06 Motor dysfunction (Due to any neurological disorder).** Persistent disorganization of deficit of motor function for age involving two extremities, which (despite prescribed therapy) interferes with age-appropriate major daily activities and results in disruption of:
>
> A. Fine and gross movements; or
> B. Gait and station.

20 C.F.R. Part 404, Subpart P, App. 1. <u>See</u> (www.ssa.gov/disability/professionals/bluebook/111.00-Neurological-Childhood.htm#111_06) (last visited December 1, 2011).

As acknowledged by the ALJ, the medical evidence reflects that A.R. has CMT[12], and has atrophy in the upper and lower

---

[12] The National Institute of Neurological Disorders and Stroke reports that the "neuropathy of CMT affects both motor and sensory nerves. (Motor nerves cause muscles to contract and control voluntary muscle activity such as speaking, walking, breathing, and swallowing)" and describes the typical symptoms of CMT as: "A typical feature includes weakness of the foot and lower leg muscle, which may result in foot drop and a high-stepped gait with frequent tripping or falls. Foot deformities, such as high arches and hammertoes are also characteristic due to weakness of the small muscles in the feet. In addition, the lower legs may take on an 'inverted champagne bottle' appearance due to the loss of muscle bulk. Later in the disease, weakness and muscle atrophy may occur in the hands, resulting in difficulty with fine motor skills." Charcot-Marie-Tooth Disease Fact Sheet, Pub. No. 07-4897, National Institute of Neurological Disorders and Stroke, National Institutes of Health (April 2007) (Continued)

extremities causing weakness in certain muscles and a flat
footed gait with slight foot drop. (Tr. 176). The ALJ determined
that A.R.'s difficulties resulting from CMT did not rise to
Listing level severity, and in support of said finding, noted
that A.R. did not wear the prescribed AFOs which help to prevent
falls when she is walking, and that the medical records do not
contain any complaints of or observations of hand tremors.  The
ALJ also found that A.R. is able to carry out age appropriate
major activities of daily living, and that Dr. Durham noted an
absence of independent documentation of A.R.'s functioning.

The undersigned finds that the ALJ's decision is supported
by substantial evidence.  First of all, no physician has opined
that A.R. meets Listing 111.06. Second, while the record
evidence reflects that A.R. required surgery in November 2000 to
treat her right cavovarus foot deformity, and that atrophy in
her upper and lower extremities and a flat type of gait has been
noted in the treatment records, the treatment records do not
establish that A.R.'s hands were affected by CMT so as to
interfere with age appropriate major daily activities and to

_____

(http://www.ninds.nih.gov/disorders/charcot_marie_tooth/detail_c
harcot_marie_tooth.htm) (last visited Mar. 15, 2012).

result in the disruption of fine and gross movements or gait or station.

Indeed, the treatment notes do not reflect any functional limitations identified by A.R.'s treating physicians. The treatment notes instead reflect a single complaint regarding hand cramps, which the physician deemed as not much of a problem. Further, while A.R. contends that she suffers from hand tremors which make it difficult for her to carry her lunch tray and book bag, the evidence reflects that she is able to write, dress herself, and ride the bus to school. Moreover, as noted by Dr. Durham during the administrative hearing, the academic records reflect that A.R. is doing well in school, and none of her teachers identified any problems, physical or otherwise[13]. Additionally, while Dr. Searcy observed during his

---

[13] Plaintiff has argued that the ALJ should have solicited additional records from the school to address Dr. Durham's statement regarding the lack of independent school records documenting A.R.'s functional limitations. "It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim." Ellison v. Barnhart, 355 F. 3d 1272, 1276 (11th Cir. 2003)(citations omitted); see also Bailey v. Social Security Admin., 444 Fed. Appx. 365, 368 (11th Cir. 2011) (unpublished). The record reflects that school records were included in the materials before the ALJ.   Given that neither the treatment records nor the school records reflected any functional limitations imposed by any of A.R.'s treating physicians, the ALJ properly concluded that additional school records were not necessary. Further, Plaintiff was free to submit any additional (Continued)

one time examination of A.R. that she exhibited decreased
bilateral grip strength and wrist strength, he did not note that
A.R. had any functional limitations in caring for herself. (Id.
at 234-235).  Accordingly, the undersigned finds that the ALJ's
determination that A.R. does not meeting Listing 111.06 is
supported by substantial evidence.

   b.   A.R. does not meet Listing 101.02A

   Contrary to Plaintiff's contention, the ALJ did not err in
finding that A.R. does not meet Listing 101.02A. The pertinent
regulations define an inability to ambulate effectively as an
"extreme limitation of the ability to walk; i.e., an impairment
that interferes very seriously with the child's ability to
independently initiate, sustain, or complete activities." See 20
C.F.R. § 404.1525,Appendix 1, Part B, 101.02(B). Examples of an
inability  to ambulate effectively in children include, but are
not limited to, the following: [t]he inability to walk without
the use of a walker, two crutches or two canes, the inability to
walk a block at a reasonable pace on rough or uneven surfaces,
the inability to use standard public transportation, the
inability to carry out age-appropriate school activities

_____

school records that she deemed necessary, but for whatever
reason, elected not to do so.

independently, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. 20 C.F.R. § 404.1525, Appendix 1, Part B, 101.00(B)(3).

Plaintiff contends that the ALJ erred in ending his analysis upon finding that A.R. is able to ambulate without the assistance of a hand-held device. According to Plaintiff, the ALJ failed to consider whether A.R. could walk at a reasonable pace or carry out school activities independently given her testimony that she is often late because she is unable to walk from one room to another in the allotted time and that she requires assistance with her lunch tray and books. Although the ALJ's discussion of this issue was not detailed, substantial evidence supports his ultimate conclusion that A.R. does not meet this Listing. First, the ALJ found not only that A.R. did not use a hand-held device, but he also found that Plaintiff and A.R.'s testimony regarding the extent of limitations caused by her impairments was not entirely credible because they were not borne out by the treatment records[14]. As noted supra, A.R. reported to her treating physicians that she was doing well, and the treating notes are devoid of any reports of problems

---

[14] The ALJ may use his discretion to apply the amount of credit to a claimant's testimony of pain and other symptoms so long as he articulates the reasons for that decision. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

ambulating at school or elsewhere. Further, the school records reflect that A.R. was excelling in normal classes, including physical education, and that she was able to ride the bus to school. Plus, neither the treatment records nor the school records contain any limitations on A.R.'s physical activities. In fact, Dr. Killian, one of A.R.'s treating physicians, noted in June 2005 that A.R. was doing quite well, and that she is "an independent ambulator." (Tr. 122). Accordingly, the undersigned finds that the ALJ's determination that A.R. does not meet Listing 101.02A is supported by substantial evidence.

d. A.R. does not functionally meet a Listing.

The undersigned finds that the ALJ did not err in finding that A.R. does not functionally meet a listing because she does not have marked limitations in two domains, or an extreme limitation in one domain. The ALJ found that A.R. has no limitations in acquiring and using information, attending and completing tasks and interacting and relating to others. Plaintiff does not contend nor does the record reflect that A.R. has any limitations in these domains. According to Plaintiff, the ALJ erred in finding that A.R. has less than marked limitations in health and well being, and he inappropriately credited the opinion of Dr. Durham, a nonexamining physician, over that of Dr. Searcy, an examining physician, in reaching this conclusion.

25

The law is well-settled that the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. Jones v. Bowen, 810 F. 2d 1001, 1005 (11th cir. 1986). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment. Wheeler v. Heckler, 784 F. 2d 1073, 1075 (11th Cir. 1986). The Commissioner "may reject the opinion of any physician when the evidence supports a contrary conclusion." Bloodsworth v. Heckler, 703 F. 2d 1233, 1240 (11th Cir. 1983). Further, the ALJ is responsible for resolving conflicts in the evidence.

In this case, both Dr. Durham and Dr. Searcy opined that A.R. has a marked limitation in the domain of moving about and manipulating objects, but disagreed with respect to whether A.R. has a marked limitation in the domain of health and physical well being. Dr. Searcy indicated that A.R. has a marked limitation in this domain, while Dr. Durham opined that her limitation is less than marked.

The domain of health and physical well being considers the cumulative effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 CFR 416.926a(1). Unlike

the other domains, this domain does not address typical development and functioning, but focuses instead on how recurrent illness, the side effects of medication, and the need for ongoing treatment affects the child's health and sense of well being. 20 CFR 416.929a(1).

In finding that A.R. has a less than marked limitation in this area, the ALJ noted that A.R. was diagnosed with CMT-II in November 2000, that she underwent surgery to correct a right foot deformity a month later, and that her treatment since that time has been very conservative.  The ALJ also noted that A.R.'s asthma and allergic rhinitis have been well controlled with medications and did not entail any hospitalizations nor emergency room visits.  (Tr.  at 190).  The ALJ further noted the absence of any evidence reflecting that any of A.R.'s medication caused persistent side effects.  In addition, while A.R. reported frequent visits to the restroom, there is nothing in the medical records which reflect that she received any treatment for such, or that this affected any of her daily activities.  Accordingly, the ALJ properly found that A.R.'s impairments do not functionally equal a Listing, and the record contains substantial evidence which supports the ALJ's findings and reveals that he carefully considered all the relevant evidence in finding that A.R. is not disabled.

**V.    Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income, be **AFFIRMED.**

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this **15TH** day of **March, 2012.**


                              _____/s/ SONJA F. BIVINS_ ____
                              **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection.**  Any party who objects to this recommendation, or anything in it, must, within fourteen days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[15]The Court's Local rules were amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.